UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

AARON WARNER

                          Case No.

     Plaintiff,

vs.

MARINE TOWER CONDOMINIUM, INC.

     Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff AARON WARNER, by and through his undersigned counsel, and sues Defendant, MARINE TOWER CONDOMINIUM, INC., and states as follows:

### NATURE OF THE ACTION

1. This is a civil action brought pursuant to the Fair Housing Act (hereinafter "FHA"), 42 U.S.C. 3601, *et seq.*, stemming from unlawful discrimination against Plaintiff, a person with disabilities by MARINE TOWER CONDOMINIUM, INC. (hereinafter "MARINE TOWER"). MARINE TOWER violated the FHA by: (1) publishing a statement indicating that disabled individuals are not welcome within the community and (2) by discriminating against ARRON WARNER in the terms, conditions, and provisions of facilities in connection with Plaintiff's dwelling at MARINE TOWER because of his disability.

## PARTIES

2.       Plaintiff AARON WARNER, (hereinafter "WARNER" or "Plaintiff"), a resident and citizen of Broward County, Florida, is a person with a disability pursuant to the definitions of applicable federal anti-discrimination laws, including the Fair Housing Act, 42U.S.C. § 3601, *et seq.*, and, is otherwise sui juris.

3.       WARNER resides at 2500 E. Las Olas Blvd., Fort Lauderdale, FL 33301-1588 within the MARINE TOWER community.

4.       Defendant MARINE TOWER CONDOMINIUM, INC., is a Florida non-profit corporation, organized and operating pursuant to Chapter 718, Florida Statutes.

5.        MARINE TOWER's principal address is 2500 E. Las Olas Blvd., Fort Lauderdale, FL 33001-1588.

6.       MARINE TOWER is responsible for administering and governing its condominium association pursuant to its Articles of Incorporation, By-Laws, and its Rules and Regulations.

7.       The housing units at MARINE TOWER are "dwellings" within the meaning of 42 U.S.C. § 3602(b), FHA.

8.       MARINE TOWER is subject to the anti-discrimination provisions of the FHA.

## JURISDICTION AND VENUE

9.       This Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3616, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*.

10.      Venue is proper in the Southern District of Florida, Fort Lauderdale Division, under 28 U.S.C. §1391(b) because these claims arose in this judicial district.

## GENERAL ALLEGATIONS

11. AARON WARNER suffers from mental impairments, specifically bipolar disorder, severe depression, and anxiety. His disabilities substantially limit his major life activities, including, without limitation, self-care, concentrating and sleeping. Therefore, WARNER is a person with a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

12. WARNER relies upon the comfort and companionship of his emotional support animal, a Lhasa Apso named "Macie," to alleviate the symptoms of his disability.

13. To have equal use and enjoyment of his dwelling, WARNER must reside with his emotional support animal at all times.

14. The Declaration of Condominium for MARINE TOWER prohibits all pets other than two small birds.

15. MARINE TOWER has in place a burdensome, intrusive policy regarding requests to waive its pet restrictions for residents or potential residents that have disability-related needs to reside with assistance animals. Further, the policy imposes illegal, discriminatory conditions upon persons who have been granted a waiver of the pet restriction for an assistance animal. The MARINE TOWER policy violates the Fair Housing Acts in at least the following ways:

   a. requiring a resident or potential resident requesting an accommodation to complete and notarize an application form provided by MARINE TOWER under penalty of perjury and acknowledge that "any material misstatement or omission of fact" may subject the requestor to "both civil and criminal penalties;"

   b. in the case of disabilities and/or disability related needs that are not apparent, purporting to require a "diagnosis and valid prescription" which must include "a detailed description of the individual's disability and particular limitation the

individual experiences as a result" and "a detailed description of the individual's disability-related need for accommodation;"

c. inquiring whether "other corrective measures" are available which will "permit the use and enjoyment" of the resident or potential resident's dwelling;

d. prohibiting assistance animals in common areas such as Lobbies, Card Room, Party Room, Library, Hobby Room, Captain's Lounge, Pool Area, BBQ Area, Management Office, Storage Rooms, Laundry Rooms, and Trash Rooms;

e. requiring the owner of the assistance animal to provide "proof of a licensed pest control service contract" to treat their dwelling "monthly for fleas, tics, (sic) etc.;"

f. requiring a disabled resident or potential resident to provide the Management Office with "written assurance" that the animal is receiving flea and tick medicine on a continuous basis;

g. stating that if the disabled resident or potential resident acknowledges that if he or she "fails to take requisite preventative pest control measures," s/he will be "billed by the association to spray the carpet in the hallway and any other common elements used by my service animal or emotional support animal at least every three months;"

h. requiring a disabled resident or potential resident that has been given a waiver of the no pet rule to re-submit "documentation" annually;

i. requiring at all times when assistance animals are not in the Owner's unit they must be "recently bathed and appropriately groomed, and wear a Shed Defender ®, or similar service, to mitigate the impact of dander and other allergens that may negatively impact other residents;"

j.  requiring that animals be carried between the owner's unit and the exterior of the building "to the extent reasonable, practicable and possible;" and

k.  reserving onto the Board the ability to "reevaluate the request from time to time as it deems reasonable and appropriate in its sole discretion."

16. The discriminatory policies listed above are contained in the MARINE TOWER's Rules and Regulations, which are given to potential residents and were given to WARNER before he was approved to be a resident. The Rules and Regulations constitute "a notice or statement with respect to sale or rental of a dwelling," and indicate a clear preference that persons with disabilities that rely upon assistance animals not live at MARINE TOWER. The relevant portions of MARINE TOWER's Rules and Regulations and Application are attached hereto as Exhibit A.

17. On or about June 1, 2017, MARINE TOWER's attorney, after learning that the Warners would be seeking an accommodation for an assistance animal, responded that "a medical diagnosis by a Florida licensed physician of disability is required," the documentation must contain a "wet ink" signature by the physician, and insinuated that this documentation is necessary to weed out deceitful individuals trying to get "pets into this non-pet building." MARINE TOWER's attorney also advised Plaintiff's title attorney to note that "there is a condominium with essentially the same floor plan, also on Las Olas Blvd. less than 1000 feet away that is pet friendly." This statement was also made in connection with the sale of a dwelling and indicates a preference that WARNER live someplace other than MARINE TOWER. Exhibit B.

18. On June 5, 2017, WARNER, through undersigned counsel, requested a waiver of MARINE TOWER's no pet rule for his emotional support animal, Macie, as an accommodation

of WARNER's disabilities, and provided a letter from WARNER's psychiatrist, Dr. Maulik K. Trivedi, as verification of WARNER's disability related need for an accommodation. Exhibit C.

19.     On or about June 9, 2017, undersigned counsel asked for an update of the status of WARNER's request for accommodation and was told that the request would not be considered until WARNER completed and submitted MARINE TOWER's Application form.

20.     On or about June 9, 2017, undersigned counsel emailed counsel for Marine Tower providing authority for her assertion that WARNER did not need to submit his request for accommodation on Marine Tower's preferred form, and pointing out numerous ways in which Marine Tower's assistance animal policy was illegal.  See Exhibit D. The email concluded:

> *To reiterate our earlier conversation:*
>
> *I am will[ing] to accept an accommodation that is conditioned on my client providing proof his dog is up to date on vaccines and receives regular flea control, that the dog will not be a nuisance and that the dog will be cleaned up after. I am not willing to ask my client to sign the illegal application, and if the association denies the request because it is not on their preferred form they can expect a lawsuit.*

21.     On or about June 13, 2017 WARNER received a call from the building manager informing him that MARINE TOWER's Board had voted to grant WARNER a waiver of the no pet rule.

22.     On or about June 14, 2017 undersigned counsel emailed counsel for MARINE TOWER's the following question:

> *Mr. Leonard- my client received a call from the building manager informing him that the board had voted to approve the requested waiver of the no pet rule. Please confirm that he will not be charged for spraying carpets or expected to request a waiver again in a year. Will he be receiving written confirmation that his request for accommodation has been granted?*

23.  On or about June 21, 2017, counsel for MARINE TOWER replied:

   *Please let this email confirm the message you received last week from David Kramer, the Board of Governors of Marine Tower Condominium, Inc., has approved the requested accommodations as suggested in your emails for the owners of 1006.*

24.  On or about July 22, 2017 WARNER and his wife closed on their unit in MARINE TOWER.

25.  Although MARINE TOWER had been informed through its counsel that its assistance animal policy was illegal in at least eight enumerated ways, on September 19, 2017, WARNER was provided a revised copy of MARINE TOWER's Rules and Regulations adopted July 10, 2017, still containing illegal, discriminatory provisions and still purporting to require residents and potential residents to utilize the illegal Application form in order to request an accommodation for an assistance animal.

26.  In addition to being subject to the multiple illegal provisions in the revised policy, since WARNER began residing within his unit at MARINE TOWER, he has been told that when he is accompanied by his emotional support animal, he may not use the common elevator but is relegated to the service elevator. Additionally, his wife was verbally accosted by a fellow resident for entering her home through the lobby and for not carrying Macie.

27.  These restrictions are preventing WARNER from having equal use and enjoyment of the common areas as any other non-disabled residents.

28.  On or about August 16, 2017, undersigned counsel again attempted to educate counsel for MARINE TOWER, noting the illegal restrictions placed by MARINE TOWER upon disabled individuals dependent upon assistance animals. Exhibit E.

29. Counsel for MARINE TOWER responded on September 15, 2017, advising that "[w]here an animal is permitted on the grounds of Marine Tower, whether as a service or support animal, the Association is absolutely within its legal right to require the animal's handler to take reasonable precautions with respect to such animal, by requiring that animal use only the service elevator or ensuring that proper preventative pest control measures have been taken…Marine Tower has no intention of removing these provisions from the Rules." Exhibit F.

30. WARNER has retained undersigned counsel to represent him in this matter and has agreed to pay them reasonable fees for their services.

31. At all times material hereto, MARINE TOWER was aware that WARNER is a disabled individual who relies upon an emotional support animal to alleviate the symptoms of his disabilities.

32. Each and all of the above acts, both of omission and commission, were acts of discrimination done with deliberate indifference to AARON WARNER's disabilities and each and all were a proximate cause of the damages suffered by AARON WARNER.

33. All conditions precedent to bringing of this action by WARNER have occurred, or the performance of such conditions have been waived by Defendant MARINE TOWER.

<u>**COUNT I**</u>
<u>**PUBLISHING A DISCRIMINATORY STATEMENT**</u>
<u>**42 U.S.C. § 3604(c)**</u>

Plaintiff re-alleges and reincorporates by reference paragraphs 1 though 33 as if fully set forth herein.

34. Pursuant to 42 U.S.C. § 3604(c), it is unlawful for a housing provider "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or

discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."

35. MARINE TOWER's policy on assistance animals within its Rules and Regulations is a statement that indicates an intention to discriminate against residents and potential residents with disabilities that rely upon assistance animals, and evinces a preference that individuals with disabilities not reside at MARINE TOWER.

36. WARNER was provided a copy of the Rules and Regulations in connection with his purchase of a unit at MARINE TOWER.

37. WARNER has been injured by Defendant's discriminatory statements and policies, in that he has been made to feel unwelcome in his own home because of his need for an accommodation for his assistance animal.

38. MARINE TOWER's policy on assistance animals within its Rules and Regulations communicates to any other potential resident that if s/he has an assistance animal it will be difficult to get approved, that s/he must provide his or her diagnosis and detailed information regarding his or her disability and need for an accommodation, and that he or she will be billed for pest services.

39. MARINE TOWER has been informed at least twice that its policy and regulations regarding assistance animals is discriminatory and illegal.

40. The continued implementation of this policy, and its publication to residents and potential residents, constitutes knowing, willful and wanton discrimination and evinces reckless or callous indifference to the federally protected rights of others.

41. As a direct and proximate result of MARINE TOWER's discriminatory notice and policy, Plaintiff suffered irreparable loss and injury including, but not limited to, monetary damages,

mental anguish, loss of dignity, emotional distress, humiliation, and loss of his rights to equal housing opportunities regardless of disability.

WHEREFORE, AARON WARNER demands judgment against MARINE TOWER CONDOMINIUM, INC to declare that the actions of MARINE TOWER violated the Fair Housing Act by discriminating against a person with disabilities, and to award Plaintiff compensatory and punitive damages, attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

## COUNT II
## DISCRIMINATION IN
## THE PROVISION OF SERVICES OR FACILITIES
## IN CONNECTION WITH A DWELLING
## (42 U.S.C. § 3604(f)(2))

Plaintiff re-alleges and incorporates, by reference, paragraphs 1 through 33 as if fully set forth herein.

42. The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability]." 42 U.S.C. § 3604(f)(2).

43. At all times relevant to this complaint, MARINE TOWER had actual knowledge of WARNER's disability and disability-related need for an accommodation.

44. Notwithstanding the same, MARINE TOWER has intentionally and unlawfully discriminated against WARNER because of his reliance upon an assistance animal.

45. WARNER has been denied the privileges and benefits of his unit and access to the common areas by virtue of the conduct described herein above, including without limitation: access to the lobby, gym, card room, party room, library, hobby room, laundry rooms, pool area,

BBQ area, storage rooms, trash rooms, elevators, and lower garage, when accompanied by his emotional support animal.

46. The terms and provisions of WARNER's "accommodation" are discriminatory as MARINE TOWER purports to require that all times Macie is not in the WARNER's unit she must be carried and wear a "Shed Defender® or similar device to mitigate impact of dander."

47. Denying WARNER equal access to the common areas of his community constitutes knowing, willful and wanton discrimination and evinces reckless or callous indifference to the federally protected rights of others.

48. As a direct and proximate result of MARINE TOWER's discrimination in the terms, conditions, or provisions of services, Plaintiff suffered irreparable loss and injury including, but not limited to, monetary damages, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his rights to equal housing opportunities regardless of disability.

WHEREFORE, AARON WARNER demands judgment against MARINE TOWER CONDOMINIUM, INC. to declare that the actions of MARINE TOWER violated the Fair Housing Act by discriminating against a person with disabilities, and to award Plaintiff compensatory and punitive damages, attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

### PRAYER FOR RELIEF

AARON WARNER respectfully requests that this Court enter judgment as follows:

a) Declaring the discriminatory housing practices of MARINE TOWER as set forth above, violates the Fair Housing Act;

b) Requiring MARINE TOWER to notify and distribute, in writing to each and every resident of the MARINE TOWER community, a legal policy enumerating its residents' FHA rights with respect to disability-related assistance animals;

c) Enjoining MARINE TOWER from limiting the access of disabled residents to common areas and from requiring disabled residents take the service elevator;

d) Awarding to Plaintiff such damages as would fully compensate him for injuries caused by MARINE TOWER's discriminatory and tortious conduct;

e) Awarding to Plaintiff punitive damages;

f) Awarding to Plaintiff reasonable attorney's fees and costs incurred in bringing this action to enforce the FHA; and

g) Granting such other relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated: December 6, 2017                                   Respectfully Submitted,

BY:/s/ Marcy LaHart                                       BY: /s/ Heidi M. Mehaffey
Marcy I. LaHart, Esq.                                     Robert N. Hartsell, Esq.
Florida Bar No. 0967009                                   Florida Bar No. 636207
Marcy@floridaanimallawyer.com                             Sarah M. Hayter, Esq.
MARCY I. LAHART, P.A.                                     Florida Bar No. 83823
4804 SW 45th Street                                       Heidi M. Mehaffey, Esq.
Gainesville, Florida 32608                                Florida Bar No. 118806
Telephone (352) 224-5699                                  Robert@Hartsell-Law.com
Attorney for Plaintiff                                    Sarah@Hartsell-Law.com
                                                          Heidi@Hartsell-Law.com
                                                          ROBERT N. HARTSELL, P.A.
                                                          Federal Tower Building
                                                          61 NE 1st Street, Suite C
                                                          Pompano Beach, Florida 33060
                                                          Telephone (954) 778-1052
                                                          Attorneys for Plaintiff